**In the Interest of Frank SNEED, Jr., a Child.**

**No. 18216.**

**Court of Civil Appeals of Texas, Fort Worth.**

**Dec. 27, 1979.**

Gabert & Robin, and Sharon Gabert, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Tarrant County, Pam Corley and William Kane, Asst. Dist. Attys., and Chief of App. Section, Fort Worth, for appellee.

OPINION

MASSEY, Chief Justice.

In this case the Tarrant County Child Welfare Unit initiated proceedings to have it declared that a minor child, Frank Sneed, Jr., was one whose physical or emotional well being was endangered by its condition and surroundings and by the conduct of its natural parents. Pursuant to the authority of Tex. Family Code Ann. Ch. 15, "Termination of the Parent-Child Relationship", and

by provisions to found thereunder in § 15.-02, (Supp.1978) "Involuntary Termination of Parental Rights", it filed its petition in the court below to have appointed as the temporary managing conservator of said child one Wayne Hairgrove, Program Director, Tarrant County Child Welfare Unit.

The parents of the child were made parties and were served; Ward Allen White was appointed attorney ad litem for the child; and trial ensued at which all necessary and proper parties appeared. The judgment decree of the court stated that "The Court finds that the Respondents engaged in conduct and allowed the child to remain in conditions and surroundings which endangered the physical and emotional well-being of the child," decreed termination of the parent-child relationship of the child to his parents, Frank Sneed and Laverne Sneed, the respondents, and appointed Wayne Hairgrove to be managing conservator. The parents appealed.

We affirm.

Suggestion of death of Frank Sneed has been filed with this court and at this time the only appellant is Laverne Sneed, no appeal having been taken by Ward Allen White, the attorney ad litem.

Essentially, the points of error presented by Mrs. Sneed present the contention of "no evidence" to support the submission of the case and findings of the court, as the fact finder in the case, and alternatively, the contention that the findings of the court were so contrary to the greater weight and preponderance of the whole of the evidence in the record as to be clearly erroneous.

We overrule the complaints presented. We forego discussion of the "no evidence" points because they are necessarily covered by what is to be said concerning the complaint that the findings were contrary to the greater weight and preponderance of the evidence.

Noted is the finding set out by the trial court in its judgment. Such finding was repeated in the findings of fact prepared and filed by the court, plus another of the several findings made, to-wit: "The Court finds as a matter of fact that the Respondents (the parents) knowingly allowed the child Frank Sneed, Jr. to remain in conditions or surroundings which endangered the physical and emotional well-being of the said child."

In supplemental findings of fact prepared upon motion of the parents the court further found: "The Court finds that Respondents did not place the child in conditions which they knew at the time were detrimental to the child", and "The Court finds that the care of (sic) lack of care of the child was not through malice nor carlessness (sic) nor disregard, but through ignorance." We see nothing in these findings which negated the earlier finding: "The Court finds that the Respondents engaged in conduct and allowed the child to remain in conditions . . . which endangered the physical and emotional well-being of the child."

The findings of the trial court were all adequately supported by the evidence brought forward for purposes of the appeal. The findings were not so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous. The same is true relative to the trial court's conclusion of law to the effect that termination of the parent-child relationship would be for the best interest of the child.

We deem both the findings mentioned, plus the one that termination would be in the child's best interest to have support, as noted. In the argument in support of the points of error the thrust is that by the evidence ignorance, not knowledge, of the way the child should be cared for was the reason for the conditions in which the child was found; and that more time and opportunity should have been afforded the parents to learn how to care for the child so that the admitted harmfulness of the environment and conditions, especially in nutrition and sanitation, might be remedied by their education and training in such care. There is justification for this presentation, but it does not reach the court's material finding, to-wit: "Respondents . . . allowed the child . . . to remain in

condition . . . which endangered the physical and emotional well-being of the said child."

We cannot say that the removal of the child from the parents was so sudden and inconsiderate and without justification that what amounted to the approval of such by the trial court would constitute an abuse of discretion. The evidence, which we see no necessity to detail, shows that there was a degree of danger to the child to leave him in the conditions in which originally found, and which after a period in which attempted instruction and training was afforded to his parents—admittedly brief in number of days—had not been substantially improved. There was evidence of want of disposition by the mother to benefit by the instruction and training afforded to her. The condition of the child in question was not such that it would be appropriate in the circumstances to make of him a "guinea pig" upon whom his parents should be allowed to practice until they might become more proficient in child care.

The points of error have been severally examined. All are overruled.

Judgment is affirmed.